LANIER, Judge,
dissenting.
The majority opinion is predicated on the erroneous conclusion that the written sublease controlled the legal relations between Bozeman and American Branch during the suspensive appeal of the trial court’s judgment which ordered specific performance of an agreement to execute a written lease. See La.C.C. arts. 1986-1988.
ADDITIONAL FACTS
On January 24, 1985, Bozeman filed suit against American Branch seeking a declaratory judgment that American Branch was obligated to execute a written lease with him for the property in question. Bozeman obtained a temporary restraining order to prevent American Branch from evicting him from the property until the issue was decided. American Branch reconvened seeking a judgment to terminate Boze-man’s lease, obtain past due rent and evict Bozeman. This matter was heard on February 12, 1985.
After the hearing on February 12, 1985, the trial court judge gave oral reasons for judgment. These reasons were transcribed and are attached as an exhibit to American Branch’s motion for summary judgment herein. In these reasons for judgment, the trial court judge found as fact that (1) Bozeman first leased the property from American Branch in April of 1984 under an oral month-to-month lease; (2) American Branch “was in no big hurry to sign the new sublease and that Mr. Pendergraft [representing American Branch] agreed to let Mr. Bozeman continue leasing the property on a month-to-month basis” [Emphasis added]; and (3) Bozeman “commenced seeking a lessee and came in contact with Mr. Reynolds and subleased the premises to Mr. Reynolds on the basis that a written lease would be confected between American Branch and himself [Bozeman].” The trial court held that Bozeman relied on the promise by Mr. Pendergraft [on behalf of American Branch] and was entitled to compel American Branch to execute (sign) a written lease in his [Bozeman’s] favor. The trial court specifically held as follows:
Further, the Court finds that, according to the evidence, that the agreement between American Branch and Boze-man was that Mr. Bozeman would have a month-to-month lease of the premises until the new sublease (Defendant Exhibit Number-1) was executed. The rights of Mr. Bozeman under a month-to-month lease, as I appreciate them to be, is that since there were no prohibitions against him in the oral month-to-month lease from subletting, that certainly he had a right to sublet to Mr. Reynolds.
It is the Court’s finding that, inasmuch as from the meeting in March or April 1, 1984, that Mr. Gravois has been released from the October 19, 1978 lease; that American Branch agreed to execute a new sublease to Mr. Bozeman, and that while the sublease was being prepared a lease between American Branch and Bozeman was confected on a month-to-month basis; that as such, a month-to-month lease has been in effect up until the time of this particular hearing; and that Bozeman, of course, is liable for the monthly sum of $650 under the lease *1118 which was tendered but rejected by American Branch. [Emphasis added.]
Thus, it is an uncontradicted fact in the record before us that Bozeman possessed the property pursuant to an oral month-to-month lease until such time as American Branch signed a written lease in his favor. The trial court entered judgment ordering American Branch to sign such a lease and permanently enjoined American Branch “from disturbing the peaceable possession” of Bozeman of the leased premises. American Branch took a suspensive appeal. This judgment was affirmed by this court on October 15, 1986. On November 20, 1986, Bozeman, through counsel, made demand on American Branch to sign the written lease. The Louisiana Supreme Court denied writs on December 12, 1986. In a letter dated February 26, 1987, American Branch returned Bozeman’s rent checks to him and advised that “there is no sublease affecting the subject property.” American Branch filed this suit on March 20, 1987.
EFFECT OF SUSPENSIVE APPEAL
The majority holds that, while this action was being suspensively appealed, the written lease was in effect between the parties, Bozeman did not timely exercise his option to renew for an additional five years under the written lease and, therefore, the written lease expired on March 31, 1986, and, thus, American Branch is entitled to summary judgment that Bozeman is not entitled to possession of the premises.
American Branch took a suspensive appeal from the trial court’s judgment ordering American Branch to sign the written lease. The reason American Branch took a suspensive appeal was to keep from signing the written lease. American Branch acknowledged this in oral argument. The suspensive appeal suspended the effect and execution of the judgment requiring American Branch to sign the written lease. La. C.C.P. art. 2123. Because the written lease was not signed, Bozeman continued to possess the property pursuant to the oral month-to-month lease; he did not possess the property pursuant to the unsigned written lease. The facts are uncon-tradicted that it was the intention of the parties that “Mr. Bozeman would have a month-to-month lease of the premises until the new sublease ... was executed.” [Emphasis added.] Because the new written lease was not executed, it was not in effect during the suspensive appeal and did not control the legal relations of the parties. Bozeman had no obligation to timely exercise the option contained in the written lease because the written lease was not effective between the parties until it was executed. The failure of Bozeman to exercise the option in the written lease did not affect his rights under the oral month-to-month lease which was in effect during the suspensive appeal.
The majority cites La.C.C.P. art. 2123 and holds that “the law does not permit either or both parties to cure defects in their performance during the suspensive appeal period after the suspensive appeal is finally decided.” The majority cites no jurisprudence to support this holding. The majority specifically holds that the unsigned written lease controlled the legal relations of the parties during the penden-cy of American Branch’s suspensive appeal. From this specific holding, it is implicit that the majority determined (1) the trial court’s judgment terminated the oral month-to-month lease and made the written lease executory between the parties (even though it was unsigned), and (2) American Branch’s suspensive appeal did not suspend the effect or the execution of the trial court’s judgment. The practical effect of the majority’s holding is contrary to the language of La.C.C.P. art. 2123 and the Louisiana Supreme Court’s jurisprudence interpreting it.
La.C.C.P. art. 2123 provides, in pertinent part, that a suspensive appeal “suspends the effect or the execution of an appealable ... judgment.” [Emphasis added.] The interpretation of this language was discussed in Goldking Properties Company v. Primeaux, 477 So.2d 76 (La.1985). In Goldking, a money judgment was rendered against a debtor, and the plaintiff-creditor recorded the judgment in the mortgage records on the same day the judgment was rendered. The debtor then took a suspen- *1119 sive appeal, posted the suspensive appeal bond and petitioned for a mandamus directed to the clerk of court to cancel the judgment from the mortgage records. The Louisiana Supreme Court determined that the debtor was entitled to the relief requested with the following rationale:
The Code of Civil Procedure sets forth the provisions for suspensive appeals. It defines such an appeal as one that “suspends the effect or the execution of an appealable order or judgment.” La.Code Civ.P. art. 2123. Neither the Code of Civil Procedure nor the Civil Code, however, defines what constitutes an “execution” or an “effect” of a judgment.
The word “effect” was added to the definition of a suspensive appeal in 1960 when the Code of Civil Procedure was enacted. The earlier Codes of Practice simply provided that a suspensive appeal “shall stay execution and all further proceedings” until a definitive judgment could be rendered on the appeal.
Even if recordation did not constitute an execution of the judgment, it would still be suspended because recordation is an effect of a judgment. We find that when the definition of a suspensive appeal was changed in I960,[8] the legislature intended the added word “effect” to have a meaning independent from the word “execution.” While the 1985 amendment to article 2252 provides that recordation of a judgment is not an execution of it, the recordation still constitutes an effect of that judgment. Since the effect of the judgment is suspended during the pendency of a suspensive appeal, the recorded judgment is null and void during that period. A judgment creditor can secure the cancellation of the judgment after he has perfected a sus-pensive appeal.
[Underscoring added.] [Three footnotes omitted.] [Goldking, 477 So.2d at 77 and 78.]
Applying Goldking by analogy to. the instant case, the effect of the trial court’s judgment ordering American Branch to sign the written lease and refrain from interferring with Bozeman’s possession of the leased premises was suspended during the pendency of American Branch’s suspen-sive appeal and that judgment was “null and void during that period.” [1] Accordingly, as a matter of law, the written lease did not control the legal relations of the parties during American Branch’s suspensive appeal. The majority’s holding to the contrary is wrong.
By holding that the written lease was executory during American Branch’s sus-pensive appeal, the majority has rendered meaningless the language of La.C.C. art. 2123 as a practical matter. To analyze the practical effect of the majority’s holding, the two possible appeal scenarios must be examined. American Branch could have taken a devolutive appeal or a suspensive appeal. If American Branch had taken a devolutive appeal, it would have had to sign the written lease, and the written lease would have become executory and controlled the legal relations of the parties during the appeal. However, American Branch chose to take a suspensive appeal. Under the majority’s holding, the unsigned written lease became executory between the parties during this suspensive appeal, that is, the suspensive appeal did not suspend the effect or execution of the trial court’s judgment (except insofar as it pertained to the signing of the written lease). Thus, under the majority’s holding, neither a devolutive nor a suspensive appeal from a trial court’s judgment ordering specific performance of an agreement to execute a written lease will suspend the effect or execution of the judgment. The only benefit of the suspensive appeal to the appealing obligor is that he will not have to sign the lease before it becomes executory. This benefit makes no practical difference *1120 as to what controls the legal relations of the parties. Accordingly, why did American Branch take a suspensive, rather than a devolutive, appeal in this case? The majority’s interpretation of La.C.C.P. art. 2123 in this factual setting renders the code article meaningless. This is contrary to the rule of statutory construction that a law should be interpreted so as to give it some effect rather than interpreted to make it meaningless. Bunch v. Town of St. Francisville, 446 So.2d 1357 (La.App. 1st Cir.1984).
The majority cites Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983), as authority for its holding. Jackson was a worker’s compensation case in which the issue was whether, pursuant to La.R.S. 23:1225, the employer was entitled to reduce the compensation benefits due the worker by the amount of social security benefits the worker received. Pursuant to La.R.S. 23:1225 and the jurisprudence interpreting it, an employer did not get the benefit of the reduction in payments until he made demand for it, and the reduction only applied prospectively. The procedural history of Jackson is significant. The employer denied liability in the trial court and did not claim the reduction. The trial court ruled in favor of the worker, and the employer suspensively appealed. The court of appeal amended and affirmed the trial court’s judgment. Then, for the first time, in his application for a rehearing, the employer claimed he was entitled to the reduction under La.R.S. 23:1225. The court of appeal remanded to the trial court to determine the reduction. The trial court ruled that the employer was entitled to the reduction only from the date that the demand for it was made in the application for rehearing in the court of appeal. The employer appealed again and contended, in part, it was entitled to reductions of payments from the date of the trial court’s original judgment. In Jackson, 442 So.2d at 853, this argument was disposed of as follows:
Defendant also asserts that all back payments of worker’s compensation due should be reduced because defendant suspensively appealed the award. He asserts that he would not be recouping payments made before his demand because, the suspensive appeal having held the judgment in abeyance, the demand automatically relates back to that judgment.
The purpose of a suspensive appeal is to defer the effects of a judgment that could possibly be overturned until it is determined that the judgment will be upheld. It does not make all affirmative acts required of an appealing party relate back to the date of appeal. As explained in Lofton [v. Louisiana Pacific Corp.,] supra [423 So.2d 1255 (La.App. 3d Cir.1982) ], La.R.S. 23:1225 is not self-operative; the social security benefits the employee receives prior to the employer’s demand cannot be recouped retroactively. It is the employer’s responsibility to ask for the benefits available to it under the statute. To allow the employer these benefits before his demand would defeat the entire purpose of the statute. [Underscoring added.]
Thus, the holding in Jackson has no relevance to the facts of the instant case. Further, Jackson pertained to the acts of an appealing party. In the suspensive appeal here in question, American Branch was the appealing party; Bozeman was not the appealing party.
The implications of the majority ruling are significant. The majority has ruled a suspensive appeal does not suspend the effect or execution of a judgment ordering specific performance on an agreement to sign a written lease. Suppose the agreement in the instant case had been an option agreement to execute a sale of immovable property. If the majority’s holding herein is applied by analogy to that factual situation, it would mean that the trial court would order specific performance on the promise to execute an act of sale of the immovable property, during the pendency of a suspensive appeal from that judgment the sale would become executory between the parties, and the ownership of the immovable property would be transferred to and vest in the option holder-vendee during *1121 the appeal. Thus, under the majority’s holding, a suspensive appeal is meaningless where a trial court’s judgment grants specific performance to execute an instrument (or, perhaps, any other type of specific performance).
For the foregoing reasons, I respectfully dissent.

. This change resulted in article 2123 of the Code of Civil Procedure which provides that a suspensive appeal suspends both the effect and the execution of the judgment.

. A suspensive appeal from a judgment granting an injunction has the effect of nullifying that judgment during the appeal. Official Revision Comment (a) for La.C.C.P. art. 3612.